# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN P. DONOVAN (on behalf of himself and others similarly situated), ) ) ) Plaintiff, ) ) v. ) ) ST. JOSEPH COUNTY SHERIFF ) (in his official capacity), ) ) Defendant. ) | CAUSE NO.: 3:11-CV-133-TLS |

## OPINION AND ORDER

The Plaintiff, John P. Donovan, on behalf of himself and others similarly situated, has sued the St. Joseph County Sheriff in his official capacity pursuant to 42 U.S.C. § 1983. Citing *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991), the Plaintiff alleges that the Sheriff employed and implemented polices that violated the Fourth Amendment when he did not ensure that pretrial detainees were presented before a judge or magistrate for an initial hearing or arraignment within forty-eight hours of their warrantless arrests or, alternatively, released from custody within, or at the expiration of, that same forty-eight hours. The Plaintiff has filed a Motion for Determination of Maintenance of Claim as a Class Action [ECF No. 24], and a Verified Application of Class Counsel and Supplemental Materials [ECF No. 26]. The Defendant has not filed a response to the Plaintiff's Motions.

## BACKGROUND

On March 30, 2011, the Plaintiff filed his Complaint–Class Action against the Defendant in his official capacity. The Plaintiff alleges that he was arrested without a warrant at around

6:00 AM on October 23, 2009, and booked into the St. Joseph County Jail, which was managed and operated by the Defendant. In his Motion for Determination of Maintenance of Claim as Class Action, the Plaintiff clarifies that he had a video hearing on October 26, more than forty-eight hours after his arrest. He seeks, on behalf of himself and others similarly situated, compensatory damages, and a declaration that the Defendant's customs, policies, or policies of omission are unconstitutional because they cause arrestees to remain in the St. Joseph County Jail for more than forty-eight after their arrest even when no judicial officer has determined that probable cause existed for the arrest.

**DISCUSSION**

**A.      Requirements for Class Certification**

Federal Rule of Civil Procedure 23 governs the certification of class actions in federal court. It allows a member of a class to sue as a representative party on behalf of all the class members if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). If all of these prerequisites are met, a court must also find that at least one of the subsections of Rule 23(b) is satisfied:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of

> conduct for the party opposing the class; or
>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b); *Harper v. Sheriff of Cook Cnty.*, 581 F.3d 511, 513 (7th Cir. 2009). The party seeking class certification has the burden of demonstrating that it is appropriate, *Trotter v. Klincar*, 748 F.2d 1177, 1184 (7th Cir. 1984), and "[f]ailure to meet any of the Rule's requirements precludes class certification," *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). The Court has "'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Id.* at 794 (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001)), but it must first conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have been met, *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012)

3

(quoting *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

The Plaintiff seeks to certify a class of individuals

> who, from March 30, 2009 to the present day, were arrested without a warrant and who were placed into the St. Joseph County Jail and not brought before a judge or magistrate within forty-eight (48) hours for an initial probable cause hearing, and/or who did not receive a judicial determination of probable cause within forty-eight (48) hours after arrest, and who were not released by the Sheriff of St. Joseph County within or at the expiration of forty-eight (48) hours.

(Pl.'s Mot. ¶ 2, ECF No. 24.) The Plaintiff asserts that he has satisfied the requirements of Rule 23(a)(1)–(4) with respect to numerosity, commonality, typicality, and adequacy of representation, and has also satisfied either Rule 23(b)(1)(A), (b)(2), (b)(3), or all of those subsections.

**1.** *Numerosity—Rule 23(a)(1)*

To meet the numerosity requirement, the class must be so large "that joinder of all members is impracticable." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); Fed. R. Civ. P. 23(a)(1). "[T]here is no magic number needed to establish numerosity." *Levitan v. McCoy*, No. 00 C 5096, 2003 WL 1720047, at *3 (N.D. Ill. Mar. 31, 2003) (citation omitted). *See Swanson v. Am. Consumer Indus., Inc.* 415 F.2d 1326, 1333 & n.9 (7th Cir. 1969) (151 is "[c]ertainly . . . a sufficient number to permit a class suit to proceed"; even 40 "is a sufficiently large group to satisfy Rule 23(a)"); *EEOC v. Printing Indus. of Metro. Wash., D.C., Inc.*, 92 F.R.D. 51, 53 (D.C.D.C. 1981) ("as few as 25–30 members should raise a presumption that joinder would be impracticable"). *But see Arreola*, 546 F.3d at 798 ("[w]e can assume that 14 would not be enough"); *Ansari v. N.Y. Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998) (numerosity "satisfied when the class comprises 40 or more members and . . . not . . . satisfied when the class comprises

21 or fewer"). Moreover, although class size is an important consideration, a court may look to other factors when determining if joinder of all class members is impracticable, including: judicial economy arising from the avoidance of a multiplicity of actions; the ease of identification of members of the proposed class; the geographic dispersion of class members; the inconvenience of trying individual suits; the nature of the action; the size of each plaintiff's claim; the financial resources of the class members; requests for prospective injunctive relief which would involve future class members; and any other factors relevant to the practicability of joining all the class members. *See* 32B Am. Jur. 2d Federal Courts § 1608; 5 Moore's Fed. Practice—Civil § 23.22[1][a] (3d ed. 2011).

The Plaintiff estimates that between 50 and 100 individuals would comprise the class. Although discovery is outstanding, the Plaintiff states that the Defendant has prepared a Memorandum that estimated the class to be around 50. The Court finds that the class size and the hindrances to class members pursuing their own claims due to potentially small recoveries and the embarrassing nature of the claims are factors that support a finding that joinder would be impracticable. Moreover, joining between 50 and 100 plaintiffs would present management and administrative difficulties, such as requiring service of separate notice and pleadings and entry of a separate order as to each joined party. Joinder would tend to result in multiplicity and a waste of judicial resources, factors which Rule 23 seeks to prevent. Accordingly, the Plaintiffs have satisfied the numerosity requirement.

**2.**     *Commonality—Rule 23(a)(2)*

Subsection (a)(2) requires the presence of "questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2556 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The class "claims must depend upon a common contention," and "[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551.

The Plaintiff has sued the Sheriff of St. Joseph County in his official capacity, which is a suit against the governmental entity for which the Sheriff works. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Brandom v. Holt*, 469 U.S. 464, 471 (1985) (stating that victory in an "official capacity" suit imposes liability on the entity that the official represents). Municipalities and other local government units are included in the persons to whom § 1983 liability applies. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978) (holding that a local government is liable under § 1983 for its policies that cause constitutional deprivations). To establish liability under § 1983 against the Sheriff's Department, the Plaintiff must show that "(1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the [Sheriff's Department]; which (3) was the proximate cause of his injury." *Ienco v. City of Chi.*, 286 F.3d 994, 998 (7th Cir. 2002). The Fourth Amendment requires that a state "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty . . . made by a judicial officer either before or promptly after arrest." *Gerstein*, 420 U.S. at 125. The Supreme Court, in *McLaughlin*, provided additional guidance

regarding how much delay could be considered prompt, holding that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*," and be immune from systemic challenges. 500 U.S. at 56 (stating that the Court was providing "some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds"); *see also Atkins v. City of Chi.*, 631 F.3d 823, 837 (7th Cir. 2011) ("*Gerstein* and *McLaughlin* tell us that persons in the United States cannot be held in custody for more than 48 hours without requiring executive branch officials—like police or parole officers—to convince a judicial officer that there is good reason to hold the person.") (Hamilton, J., concurring in part and concurring in the judgment). When an arrestee is detained beyond 48 hours without being given a judicial determination of probable cause, the burden is on the government to "demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *McLaughlin*, 500 U.S. at 57.

All the members of the Plaintiff's proposed class will have suffered their alleged injuries based on the Defendant's standard treatment of arrestees who are detained at the St. Joseph County Jail, specifically, treatment with respect to continued detention without a judicial determination of probable cause. A single answer to the question whether the Defendant's execution of a policy or custom, or the deliberate act of a decision-maker with final policy-making authority, caused these arrestees to be detained longer than forty-eight hours after their warrantless arrests is central to the validity of each of the claims against the Defendant. The inquiry will produce a common answer to the crucial question why the Defendant continued to detain arrestees who had not received a prompt judicial determination of probable cause. Rule

23(a)'s commonality requirement is satisfied.

### 3. *Typicality—Rule 23(a)(3)*

Under Rule 23's typicality requirement, the issue is whether "the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). This question—whether claims are typical of those of the class members the Plaintiff represents—is "closely related to the commonality inquiry." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The Seventh Circuit has summarized the typicality analysis as follows:

> A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [it is] based on the same legal theory. Even though some factual variations may not defeat typicality, the requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large.

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (quotation marks, citations, and ellipsis omitted). Just as the Court noted with regard to commonality, the Plaintiff has alleged that his Fourth Amendment rights were violated by the same policy-maker or by operation of the same policy of the St. Joseph County Sheriff that would give rise to the claim of the other class members—individuals likewise arrested without a warrant and detained for more than forty-eight hours. All of the claims are based on the same legal theory that the Sheriff's practice or course of conduct violates the Fourth Amendment right of persons who are arrested without a warrant to have a prompt judicial determination of probable cause "as a prerequisite to extended restraint of liberty following arrest." *Gerstein*, 420 U.S. at 114. The Plaintiff's claim has the same essential characteristics as the claims of the proposed class, and the typicality requirement

is satisfied.

**4.** *Adequacy of Representation—Rule 23(a)(4)*

Subsection (a)(4) requires that a class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To be an adequate representative, a plaintiff must have a sufficient stake in the outcome of the case to ensure zealous advocacy and must not have antagonistic or conflicting claims with other class members. *See Rosario*, 963 F.2d at 1018 ("A class is not fairly and adequately represented if class members have antagonistic or conflicting claims."). The plaintiff must also show that their legal counsel is experienced and competent. *Id.*

The Complaint shows that the Plaintiff alleges he was subject to the same standard conduct as the class that he seeks to certify. There is no indication that the Plaintiff does not have a sufficient stake in the outcome, or that his claims would be antagonistic to or in conflict with the claims of other class members seeking damages for being detained in violation of the Fourth Amendment. Later in this Opinion, the Court will discuss the adequacy of the Plaintiff's counsel to represent the interests of the class, which is governed by a separate subsection of Rule 23. *See* Fed. R. Civ. P. 23(g).

**5.** *Type of Certification Under Rule 23(b)*

If the Rule 23(a) requirements are met, a court must then assess whether a class action is

appropriate and prudent under at least one of the provisions of Rule 23(b). The Plaintiff asserts that the maintenance of a class action is appropriate under Rule 23(b)(1)(A), (b)(2), or (b)(3). Classes under (b)(1) and (b)(2) are considered mandatory classes because the Rules impart no obligation to afford the class members notice of the action, and provide no opportunity for class members to opt out. By contrast, Rule 23(b)(3) class members are entitled to receive "the best notice that is practicable under the circumstances" and to withdraw from the class at their option. *See* Fed. R. Civ. P. 23(c)(2)(B).

The Plaintiff does not indicate whether he anticipated a divided certification under separate sections, a subclass within a larger class, or simply intended to present alternative grounds for certification. For its part, the Court notes that it "should endeavor to select the most appropriate subsection, not just the first linguistically applicable one in the list." *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir. 1999). The Court finds that certification of the proposed class is most appropriate under Rule 23(b)(3), as set forth below. In arriving at this conclusion, the Court will first explain why certification is not appropriate or prudent under the other two subsections the Plaintiff identifies in his Motion and Brief.

a. Rules 23(b)(1)(A) and 23(b)(2)

The Plaintiff argues that certification under Rule 23(b)(1)(A) is appropriate because prosecuting separate claims would create a risk of inconsistent or varying adjudication that would establish incompatible standards of conduct for the St. Joseph County Sheriff. He also seeks certification under Rule 23(b)(2), which may be maintained if the party opposing the class has acted or refused to act on grounds generally applicable to the class as a whole, so that "final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Court is reluctant to certify this action under either of these subsections. "Rule 23(b)(1)(A) takes in cases where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem*, 521 U.S. at 614 (citation marks omitted). Different money damage awards do not present the risk of incompatible standards of conduct because a defendant can pay different amounts to different individuals. Even if different courts arrived at inconsistent conclusions with respect to the constitutionality of the Defendant's policy, it would only take one declaration of unconstitutionality to put the Defendant on notice that a failure to change its procedures with respect to detainees might bring about future lawsuits.

The inclusion of money damages presents additional problems that make this case inappropriate for (b)(1)(A) certification. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845–46 (1999) (noting that certification of a mandatory class that includes money damages potentially compromises the Seventh Amendment and due process rights of individual claimants); *Spano v, The Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011) (stating that the *Ortiz* Court "cautioned strongly against the overuse of (b)(1) classes" due to their mandatory nature and due process implications). The same problem arises under Rule 23(b)(2), which the Supreme Court recently clarified "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 131 S. Ct. at 2557. The Court recognized that Rule 23(b)(2) was historically used to remedy civil rights violations through a single

classwide order, but noted that "[i]n none of the cases cited by the Advisory Committee as examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction." *Id.* at 2257–58 (citing Advisory Committee's Note, 39 F.R.D. 69, 102 (1966)); *Potts v. Flax*, 313 F.2d 284, 289 n.5 (5th Cir. 1963); *Brunson v. Bd. of Trs. of Sch. Dist. No. 1 of Clarendon Cty.*, 311 F.2d 107, 109 (4th Cir. 1962) (per curiam); *Frasier v. Bd. of Trs. of Univ. of N.C.*, 134 F. Supp. 589, 593 (D.C.N.C. 1955) (three-judge court), *aff'd*, 350 U.S. 979 (1956)). In addition, "[p]ermitting the combination of individualized and classwide relief in a (b)(2) class [would be] inconsistent with the structure of Rule 23(b)," which allows (b)(3) certifications in a much wider set of circumstances than under (b)(1) and (b)(2), but then also provides greater procedural protections. *Dukes*, 131 S. Ct. at 2258. The Court concluded that, based on this structure, "we think it clear that individualized monetary claims belong in Rule 23(b)(3)." *Id.* The Supreme Court's decision in *Dukes* casts doubt on whether a class action seeking monetary relief can ever be maintained under Rule 23(b)(2), even if the monetary relief is "incidental" to declaratory and injunctive relief. *See id.* at 2560 (explicitly choosing, however, not to resolve the issue "whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause").

The Seventh Circuit has relied on the rights that class members in an action for money damages have to personal notice and an opportunity to opt out and control their own litigation, to hold that requests for injunctions may not be used to override these rights. *Jefferson*, 195 F.3d at 897. In one case, the Seventh Circuit reversed a Rule 23(b)(2) certification where requests for monetary relief were not incidental to the request for injunctive relief, applying the following

12

reasoning:

> Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members. A suit for money damages, even if the plaintiffs seek uniform, class-wide equitable relief as well, jeopardizes that presumption of cohesion and homogeneity because individual claims for compensatory or punitive damages typically require judicial inquiry into the particularized merits of each individual plaintiff's claim.

*Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000).

Here, although the circumstances that led to the alleged constitutional violation may be common to all the members of the putative class, and the resulting constitutional injury the same, this does not hold true for the remedies that might apply. The actual damages each member will be able to recovery for an established unlawful detention will vary based on individual circumstances and will thus require an individualized analysis. These claims for individualized monetary damages are not merely "incidental" to the requested declaratory relief. Even if the relief could be categorized as incidental, to avoid the potential constitutional issues surrounding the certification of a mandatory class that includes individualized claims for money damages, and because Rule 23(b)(3) more appropriately fits this case, the Court declines to certify the class pursuant to Rule 23(b)(1)(A) or Rule 23(b)(2).[1]

b.   Rule 23(b)(3)

Rule 23(b)(3) applies to most classes seeking monetary relief. In addition, the Plaintiff

---

[1] The Seventh Circuit has recognized the validity of a hybrid certification of a Rule 23(b)(2) class for the declaratory relief and a Rule 23(b)(3) class for damages. With this approach, the damages phase must be tried first to protect the right to a jury trial. *Lemon*, 216 F.3d at 581–82. It is not clear to the Court, and the Plaintiff has not explained, what advantages would exist in applying such a hybrid approach.

acknowledges that "[t]his type of class seems to be the most common in cases of over-detention of inmates arrested without a warrant and who did not receive a timely initial hearing and were not released in a timely fashion." (Pl.'s Brief 7, ECF No. 25.) The two overarching requirements are that common issues predominate and that a class action is the superior method for resolving the controversy. Fed. R. Civ. P. 23(b)(3); *Szabo v. Brideport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001). The Supreme Court has explained that the "predominance" and "superiority" requirements of Rule 23(b)(3) serve to limit class certification to cases where "'a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (citation omitted).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. This inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Id.* The predominance analysis "call[s] for caution when individual stakes are high and disparities among class members [are] great." *Id.* at 625. Here, the Defendant's potential liability is a common question that can be decided for all proposed class members, even if the extent of any damages among them varies. The operative facts regarding liability would be common to all individuals arrested without a warrant, confined at the St. Joseph County Jail, and detained for more than forty-eight hours before a judicial officer made a determination of probable cause. The overriding legal issue is whether the Defendant had a policy, practice, or custom in place that accounted for the length of the class members' detentions. The only individualized issues that are apparent at this stage of the litigation are those related to damages. The significant and

14

common issue of whether the Defendant is liable for unconstitutional restraints on liberty outweighs individualized damages issues, and the predominance requirement of Rule 23(b)(3) has been met. *See* Fed. R. Civ. P. 23(b)(3), Advisory Notes to the 1966 Amendments (providing as an example regarding predominance a "fraud perpetrated on numerous persons by the use of similar misrepresentations . . . despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class").

Under the superiority requirement, a class action should proceed under Rule 23(b)(3) only if it is superior to other methods for adjudicating the claims of the members of the proposed class. Considerations relevant to the superiority of the class action device include: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). This last consideration, "[c]ommonly referred to as 'manageability' . . . encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 164 (1974).

The Court concludes that a class action is superior to other methods for the adjudication of the proposed class claims. There is no suggestion that any class member has started separate litigation on these issues or that the federal district court in the Northern District of Indiana is a less desirable or appropriate forum than another. The Court can devise solutions to address problems presented by varying amounts of damages among class members, s*ee Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise

imaginative solutions to problems created by the presence in a class action litigation of individual damages issues."), and the personal notice and opt-out requirements of Rule 23(b)(3) will further protect the interests of those who qualify as class members. Additionally, the costs of initiating and prosecuting individual lawsuits, which is the alternative method of resolution, would likely dwarf the potential recoveries. This would be uneconomical and inefficient for the potential class members and an unnecessary waste of judicial resources. Nothing in the record before the Court suggests that class members who were detained beyond forty-eight hours would have additional claims under any statute or law such that they would have an interest in individually controlling the prosecution of their own separate action. Bearing in mind that a principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner, *see Falcon*, 457 U.S. at 155, the Court finds that certification of the proposed class is appropriate.

### B.    Appointment of Class Counsel

Rule 23 requires that a court certifying a class also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B) & 23(g). Class counsel must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(4). In appointing class counsel, the court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The

court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Additionally, because attorney's fee awards are an important feature of class action practice, and attention to this subject at the outset of certification is often a productive technique, subsection (g)(1)(C) authorizes a court to direct potential class counsel to "provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs."

Here, attorney Christopher Myers, through the Verified Application of Class Counsel, establishes that he is capable of fairly and adequately representing the interests of the class. He summarizes the work he has done in identifying and investigating the potential claims for this action, identifies the numerous civil rights class actions in which he has participated as counsel, provides the names of cases in which he acted as counsel for plaintiffs who have asserted *Gerstein*-type claims, describes the resources that he is willing to commit to represent the class, and details his fee agreement and the procedures that he anticipates would apply to the Court's calculation of any fee award.

### C. Granting Class Certification

According to Federal Rule of Civil Procedure 23(c)(1)(B), the Court, in granting certification, must define the class and the class claims and issues. The class is defined as follows: **Individuals who, from March 30, 2009, to the present day, were arrested without a warrant and detained in the St. Joseph County Jail, were not brought before a judge or magistrate and did not otherwise receive a judicial determination of probable cause within forty-eight hours after arrest, and who were not released by the Sheriff of St. Joseph**

**County within or at the expiration of forty-eight hours.** The claims of the class are that the Sheriff of St. Joseph County, in his official capacity, violated the class members' Fourth Amendment right to a prompt judicial determination of probable cause as a prerequisite to continued detention after a warrantless arrest, and that relief, including damages, declaratory relief, and attorney's fees and costs, is recoverable through 42 U.S.C. § 1983. The class will be required to establish that any deprivation of a constitutional right was the result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the St. Joseph County Sheriff's Department. To avoid liability for any detentions over forty-eight hours, the Defendant will bear the burden of proving an emergency or other extraordinary circumstance that justified the delay. *See McLaughlin*, 500 U.S. at 57. The class members will also need to prove their monetary damages, and the Defendant will be entitled to assert relevant affirmative defenses.

## CONCLUSION AND ORDER

The Plaintiff has satisfied the requisite elements of Rule 23(a)(1)–(4), Rule 23(b)(3), and Rule 23(g). Accordingly, the Court GRANTS his Motion for Determination of Maintenance of Claim as a Class Action [ECF No. 24], and Verified Application of Class Counsel [ECF No. 26]. The Court appoints Attorney Christopher Myers as Class Counsel. Class Counsel is directed to provide a Notice of Certification to each individual member of the Class who can be identified through reasonable effort. The Notice must provide an opportunity for each member to secure exclusion from the class and must otherwise be in accordance with Rule 23(c)(2). The Court confirms the telephonic status conference for June 7, 2012, at 1:30 PM. The Court will initiate

the call.

SO ORDERED on May 3, 2012.

                                             s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT
                                            FORT WAYNE DIVISION