# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN P. DONOVAN (on behalf of himself and others similarly situated), | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO.: 3:11-CV-133-TLS ) |
| ST. JOSEPH COUNTY SHERIFF (in his official capacity), | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on the parties' Motion for Final Order of Approval and Supplement Brief in Support [ECF Nos. 85, 86], in which the parties jointly move for a final order of their Settlement Agreement for this class action litigation.

## BACKGROUND

The Plaintiff, John P. Donovan, on behalf of himself and others similarly situated, sued the St. Joseph County Sheriff in his official capacity pursuant to 42 U.S.C. § 1983. Citing *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), the Plaintiff alleged that the Sheriff employed and implemented polices that violated the Fourth Amendment. Specifically, the Defendant did not ensure that pretrial detainees were presented before a judge or magistrate for an initial hearing or arraignment within forty-eight hours of their warrantless arrests or, alternatively, released from custody within, or at the expiration of, that same forty-eight hours.

A class was defined pursuant to this Court's Order of May 3, 2012:

Individuals who, from March 30, 2009, to the present day, were arrested without a

> warrant and detained in the St. Joseph County Jail, were not brought before a judge or magistrate and did not otherwise receive a judicial determination of probable cause within forty-eight hours after arrest, and who were not released by the Sheriff of St. Joseph County within or at the expiration of forty-eight hours.

The class claims are that the Sheriff of St. Joseph County, in his official capacity, violated the class members' Fourth Amendment right to a prompt judicial determination of probable cause as a prerequisite to continued detention after a warrantless arrest, and that relief, including damages, declaratory relief, and attorney's fees and costs, is recoverable through 42 U.S.C. § 1983. The Court appointed Christopher C. Myers and Ilene M. Smith of the law firm of Christopher C. Myers & Associates as Class Counsel.

Pursuant to a Consent Decree, submitted to the Court on September 20, 2012, (1) the parties identified a preliminary number of individuals meeting the class parameters, (2) the Defendant admitted liability, (3) the Defendant implemented changes to his policies, customs, and procedures to avoid further constitutional violations, and (4) the parties agreed that the Plaintiffs are prevailing parties for purposes of 42 U.S.C. §§ 1983 and 1988.

The named Plaintiff, John P. Donovan, on behalf of himself and the Settlement Class, and the Defendant, the St. Joseph County Sheriff, entered into a Class Action Release and Settlement Agreement [ECF No. 73-2]. The Settlement required the Defendant to pay $270,000 into a Settlement Fund to cover administration and notice costs, attorneys' fees and costs, the Named Plaintiff's incentive award, and claims payments. After a reduction of costs for sending the mailed notice and administering the fund, an incentive award not to exceed $5,000, and for attorney's fees of no more than $108,000 plus costs, the settlement funds would be distributed to the Settlement Class Members, defined as:

> All individuals arrested without a warrant from March 30, 2009 through October

22, 2010, and who were booked and/or placed into the St. Joseph County Jail, and who were not brought before a judicial officer within forty-eight (48) hours after their arrest for a judicial probable cause hearing, and who were detained by the St. Joseph County Sheriff in excess of forty-eight (48) hours after their arrest.

(Settlement Agr. ¶ 9.a, ECF No. 73-2.) The Settlement Class was divided into two groups: (I) Donovan and other class members for loss of liberty, and; (II) those individuals who submitted a claim form for emotional distress, mental anguish, loss of employment or wages, or other special damages. The anticipated recovery for the members of Settlement Class I is about $51.15 per hour of over detention and $12.78 for each fifteen minute increment of over detention. Any member of Settlement Class II will have an opportunity to identify and substantiate injuries and damages.

The Court preliminarily approved the Settlement on March 23, 2015. The Court confirmed Christopher C. Myers and Ilene M. Smith as Class Counsel for the Class Representative and the Class. The Court approved Homefront Legal Services, LLC, 11805 North Pennsylvania Street, Carmel, Indiana, as the Claims Administrator.

The Court conducted a Fairness Hearing on August 4, 2015, to consider: (i) the fairness, reasonableness, and adequacy of the settlement; (ii) whether the Final Order of Approval of Settlement, attached as Exhibit B5 to the Settlement Agreement, shall be entered in its current or some modified form; and (iii) the application of Class Counsel for attorney's fees and costs.

## DISCUSSION

**A.     Notice**

Rule 23 requires that the Class Members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Reasonable notice is required to all class members who would be bound by a proposed settlement. Fed. R. Civ. P. 23(e)(1).

A Class and Settlement Notice was mailed to the last known address of each individual, as listed in the St. Joseph County arrest records. Prior to mailing, the Claims Administrator attempted to find updated addresses and to verify the accuracy of the addresses of all potential Settlement Class members. If, as a result of the mailing, the Postal Service provided a forwarding address, but the Mailed Notice was not forwarded by the Postal Service, the Claims Administrator re-mailed the Mailed Notice to the forwarding address. If the Mailed Notice was returned as undeliverable a second time, no further mailing was attempted. The Claims Administrator also issued a Published Notice in *Tri County News*, a newspaper serving the South Bend area.

The procedure implemented by the plan administrator was appropriate. *See Jones v. Flowers*, 547 U.S. 220, 234–35 (2006) (stating that the plan for providing notice should involve steps to update addresses before mailing and provide for re-mailing notices to better addresses when returned as undeliverable). All but nine class members have received notice by first-class mail [ECF No. 85-5]. When notice is not available by first-class mail, alternative means, such as posting in places frequented by class members, satisfies Rule 23 and due process. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015).

The Court finds that due process and the notice requirements of Rule 23 have been satisfied. In addition, the Defendant has complied with the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715.

**B. Adequacy of the Settlement Agreement**

A district court must scrutinize and evaluate a class action settlement to determine whether it is "fair, reasonable, and adequate." *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(e)(2)). In making these determinations, the court considers five factors: (1) the strength of plaintiffs' case compared to the defendants' offered settlement amount; (2) the likely complexity, length, and expense of the litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

In considering the strength of the Plaintiff's case, the court is to quantify "the net expected value of continued litigation to the class by estimating the range of possible outcomes." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346-47 (N.D. Ill. 2010); *Synfuel*, 463 F.3d at 653. Liability has already been established. However, assigning a monetary amount to loss of liberty, and calculating emotional distress and special damages, is extremely subjective. The parties also recognize the range of possible outcomes includes a number of highly unfavorable outcomes. In estimating the range of possible outcomes and ascribing a probability to each point on the range, it has been recognized that a high degree of precision cannot be expected in valuing a litigation; nevertheless, the parties must present evidence that would enable the possible outcomes to be estimated so that the court can at least come up with a ballpark valuation. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002); *see also Eubank v. Pella Corp.*, 753 F.3d 718, 727 (7th Cir. 2014) (stating that the district court should have estimated the likely outcome of a trial in order to evaluate the adequacy of the

5

settlement). The Seventh Circuit has provided some direction:

> A high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes. Still, much more could have been done here without (what is obviously to be avoided) turning the fairness hearing into a trial of the merits. For example, the judge could have insisted that the parties present evidence that would enable four possible outcomes to be estimated: call them high, medium, low, and zero. High might be in the billions of dollars, medium in the hundreds of millions, low in the tens of millions. Some approximate range of percentages, reflecting the probability of obtaining each of these outcomes in a trial (more likely a series of trials), might be estimated, and so a ballpark valuation derived.

*Reynolds*, 288 F.3d at 285. According to *Newberg on Class Actions*, which cites extensively to *Reynolds* and the Seventh Circuit's mathematical approach, the determination of a settlement's value is found by "(1) making a rough estimate of what the class would have received had it prevailed at trial (or at other endpoints) and then (2) discounting that value by the risks that the class would face in securing that outcome." *Newberg on Class Actions* § 13.49 (5th ed.).

Based on recoveries achieved through jury verdicts or settlements in thirteen substantially similar or related cases (Joint Br. 2–3, ECF No. 86), the range of possible outcomes is from $1.00 per hour of over detention to $75.00 per hour of over detention. The probabilities for the range of outcomes is estimated as follows:

• $10.00 per hour of over detention or less: 25%;

• $25.00 per hour of over detention: 25%;

• $40.00 per hour of over detention: 25%;

• $50.00 per hour of over detention: 20%;

• $75.00 per hour of over detention: 5%.

Multiplying these amounts, and adding them together, yields a net expected value of

$32.50 per hour of over detention.[1] The proposed settlement in this case would provide each class member with more than $51.00 per hour of over detention for general loss of liberty claims. Based on these numbers, the strength of Plaintiffs' case compared to the Defendant's offered settlement amount supports a finding that the settlement is fair, reasonable, and adequate.

Second, the likely complexity, length, and expense of the litigation, *Synfuel*, 463 F.3d at 653, weighs in favor of approving the Settlement. The parties submit that "[c]ontinued litigation in this case would most certainly result in an increase in the complexity of the issues to resolve, the duration of the lawsuit, and an increase in the expenses incurred by both parties." (Joint Br. 4, ECF No. 65.) If the Court approves the settlement, the lawsuit will come to an end and Class Members will realize monetary benefits. If the Court does not accept the settlement, the case must proceed to trial and the presentation of evidence from various witnesses and sources. Although the class has been certified, and liability has already been determined, both the duration of the lawsuit and the expenses would increase.

Third, the limited opposition to the Settlement Agreement among affected parties, *Synfuel*, 463 F.3d at 653, also favors settlement. In fact, none of the 50 class members filed an objection to the Settlement.

Fourth, the "opinion of competent counsel" supports a determination that the settlement is fair, reasonable, and adequate under Rule 23. *Id.* Class Counsel is experienced in litigating

---

[1] $75.00 x .05 = $3.75
$50.00 x .20 = $10.00
$40.00 x .25 = $10.00
$25.00 x .25 = $6.25
$10.00 x .25 = $2.50

$3.75 + $10.00 + $10.00 + $6.25 + $2.50 = $32.50

civil rights actions, including cases involving the same violations set forth in this case. Defense counsel is likewise experienced in defending civil rights actions against governmental entities. Further, the parties submit that the settlement was finalized only after extensive arm's-length negotiations.

The final consideration, "the stage of the proceedings and the amount of discovery completed at the time of settlement" *Synfuel*, 463 F.3d at 653, is a relevant factor because it determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims," *Armstrong v. Bd. of Sch. Dirs. ov City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Here, the settlement occurred only after certification of a class and entry of a consent decree. Moreover, Class Counsel conducted an investigation into the law enforcement records in St. Joseph County, including all arrest records made available from the agencies that placed people in the st. Joseph County Jail, as well as Jail Booking sheets, jail prisoner spread sheets, transport sheets, and CCS summaries. Counsel also analyzed appropriate materials to develop the class member list and determine the length of over detention of each class member. With the merits of the constitutional claims already determined, the class members identified, and the length of over detention calculated, this factor weighs in favor of approving the settlement.

**C.    Attorney's Fees and Incentive Awards**

**1.    *Attorney's Fees***

Once a settlement has been reached in a class action, class counsel can petition the court for compensation from the settlement or common fund that was created for the class's benefit.

This payment scheme, which is an exception to the American Rule, "is based on the equitable notion that those who have benefitted from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007). Here, Plaintiffs' Petition for Attorney's Fees and Costs (revised) [ECF No. 71], and Brief in Support [ECF No. 68], request fees in the amount of $108,000 plus costs (not to exceed $20,000) to be paid out of the common fund. This represents 40% of the common fund.

In deciding an appropriate fee in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton*, 504 F.3d at 692 (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)); *see also Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) (finding that in common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case"). "Although is it impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). "[T]he market price for legal fees 'depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case.'" *Sutton*, 504 F.3d at 693 (quoting *Synthroid*, 264 F.3d at 721).

The Court, in its discretion, will apply the percentage method to determine Class

9

Counsel's reasonable fee. *See Americana Art China Co. v. Foxfire Printing and Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014) (stating that courts can choose the lodestar method or the percentage method); *Florin v. Nationwide of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). Class Counsel argues that the class members could not have secured competent representation for less than a 40% contingency, and that such amount is consistent with the market rate and fee awards surveyed in comparable cases. In fact, Class Counsel contracted with Donovan for 40% of the recovery or the actual Lodestar, whichever was greater.

The Court finds that the requested fee is reasonable based on the risk of nonpayment Class Counsel agreed to bear. Civil rights litigation against government entities is, in general, risky. The Court finds that while the legal theory was not novel, or particularly complex, it was not without risk to challenge a governmental practice. Additionally, the amount of recovery, even after establishing liability, is highly uncertain in this type of litigation, and is not as eagerly sought after by litigators. The Court also considers that counsel would have been aware when it accepted the case that the nature of the class could potentially contribute to delay in the case and, correspondingly, to delay in receipt of payment for services. Despite these risks, Class Counsel undertook the work necessary to identify the class, obtain a consent decree, and receive monetary payment for the Class. Accordingly, the Court finds that a 40% contingency would award Class Counsel the market price for its legal services.

**2.    *Incentive Award***

Class Counsel requests that the Court award the Named Plaintiff, Donovan, an incentive award not to exceed $5,000 from the common fund. "Incentive awards are justified when

necessary to induce individuals to become named representatives." *Synthroid*, 264 F.3d at 722; *see also Cook v. Niedart*, 142 F.3d 1004, 1016 (7th Cir. 1998). Donovan was required over the course of the last four years to be available to pursue the litigation, communicate with counsel, and participate in settlement discussions. The Court finds that an incentive award of $5,000 is appropriate.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the Motion for Final Order of Approval [ECF No. 85]. An Final Approval Order will be issued consistent with this Opinion and Order and with the Settlement Agreement. The parties are directed to comply with the terms of the Settlement Agreement, and to file a joint status report sixty days after today's date, and then once every six months until the settlement is completed and the settlement fund account is closed. A final report should be filed within sixty days after the conclusion of the distribution. The Court will retain jurisdiction and oversight of the settlement proceedings, but only until such time as the parties jointly request an order of dismissal with prejudice.

SO ORDERED on December 1, 2015.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION